# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| CHERYLL CLEWETT, on behalf of herself and all others similarly situated<br><br>v.<br><br>NEW WAVE POWER, LLC | §<br>§<br>§   CIVIL ACTION NO. 3:21-CV-0692-S<br>§<br>§<br>§<br>§ |

## **MEMORANDUM OPINION AND ORDER**

This Order addresses Cross-Claimants' Motion for Partial Summary Judgment ("Cross-Claimants' Motion") [ECF No. 130] and Cross-Defendant New Wave Power, LLC's Motion for Summary Judgment on Co-Defendants Vistra Corporate Services Company and TXU Energy Retail Company, LLC's Claims ("Cross-Defendant's Motion") [ECF No. 133] (collectively, "Cross Motions"). Having reviewed the Cross Motions, Cross-Claimants' Brief in Support of Their Motion for Partial Summary Judgment ("Cross-Claimants' Brief") [ECF No. 131], Cross-Defendant New Wave Power, LLC's Brief in Support of Its Response to Co-Defendants Vistra Corporate Services Company and TXU Energy Retail Company, LLC's Motion for Summary Judgment ("Cross-Defendant's Response") [ECF No. 143], Cross-Claimants' Reply Brief in Support of Their Motion for Partial Summary Judgment [ECF No. 152], Cross-Defendant New Wave Power, LLC's Brief in Support of Motion for Summary Judgment on Co-Defendants Vistra Corporate Services Company and TXU Energy Retail Company, LLC's Claims ("Cross-Defendant's Brief") [ECF No. 134], Cross-Claimants' Brief in Support of Their Response to New Wave Power, LLC's Motion for Summary Judgment ("Cross-Claimants' Response") [ECF No. 147], Cross-Claimants' Appendix in Support of Their Motion for Partial Summary Judgment ("Cross-Claimants' Appendix") [ECF No. 132], Appendix to Cross-Defendant New Wave Power, LLC's Brief in Support of Its Response to Co-Defendants Vistra Corporate Services Company and

TXU Energy Retail Company, LLC's Motion for Summary Judgment [ECF No. 144], Appendix to Cross-Defendant New Wave Power, LLC's Motion for Summary Judgment [ECF No. 135], and Cross-Claimants' Appendix in Support of Their Response to New Wave Power, LLC's Motion for Summary Judgment [ECF No. 148], the Court **GRANTS** Cross-Claimants' Motion and **DENIES** Cross-Defendant's Motion for the reasons stated below.

## I. BACKGROUND

This is a dispute involving the interpretation of a Contract for Services ("Agreement") between Cross-Defendant New Wave Power, LLC ("New Wave Power") on the one hand, and Cross-Claimant Vistra Corporate Services Company ("Vistra") and its affiliate Cross-Claimant TXU Energy Retail Company, LLC ("TXU") on the other hand.[1] Cross-Claimants' App. 4-29. Vistra and TXU (collectively, "Cross-Claimants") move for partial summary judgment against New Wave Power on Cross-Claimants' claims for breach of the duty to defend and duty to indemnify. Cross-Claimants' Br. 4. New Wave Power moves for summary judgment on all of Cross-Claimants' claims against it, including the aforementioned breach of contract claims and tort claims for fraudulent misrepresentation, negligent misrepresentation, and fraud by nondisclosure. Cross-Def.'s Br. 5-17.

On June 29, 2020, New Wave Power and Vistra entered into the Agreement, which provided a general framework for New Wave Power to perform services as an independent contractor for Vistra and anticipated the eventual incorporation of more specific statements of work between New Wave Power and Vistra or its affiliates. Cross-Claimants' Br. 4-5. On October 21, 2020, New Wave Power and TXU entered into a Statement of Work ("SOW")

---

[1] Although the original Agreement is between New Wave Power and Vistra, TXU is incorporated into the indemnity provisions by the definition of "Company Group." Cross-Claimants' App. 5.

stipulating that New Wave Power would provide "energy marketing services" for TXU, pursuant to the terms of the Agreement and the SOW. *Id.* at 5.

In Section 11.3 of the Agreement, New Wave Power agreed to "indemnify, defend and hold harmless" Cross-Claimants from and against "Claims/Liabilities arising from" any violation of "laws and regulations, that relate to the privacy, data protection, electronic storage, confidentiality or security of Personal Data." Cross-Claimants' App. 11, 25. In Section 11.2 of the Agreement, New Wave Power agreed to "defend, protect, indemnify and hold [Cross-Claimants] harmless from and against all Claims/Liabilities based upon personal injury and/or death." Cross-Claimants' App. 11.

### A. Underlying Claims

Plaintiff Cheryll Clewett initiated this case by bringing claims against New Wave Power, Vistra, and TXU (collectively, "Defendants"), which form the basis of the dispute between New Wave Power and Cross-Claimants. Second Am. Compl. ¶ 1. Clewett filed her Second Amended Complaint on November 1, 2021, alleging that New Wave Power repeatedly placed prerecorded telephone solicitation calls to Clewett's telephone number on Cross-Claimants' behalf. *Id.* ¶¶ 108-36. Clewett alleged that New Wave Power's actions violated the Telephone Consumer Protection Act ("TCPA") and certain provisions of the Texas Business & Commerce Code. *Id.* ¶ 1. Clewett asserted her claims against Cross-Claimants under the theory of vicarious liability. *Id.* ¶¶ 107-36.

Specifically, Clewett alleged that Defendants placed "prerecorded and autodialed telemarketing telephone calls" to her telephone number without her consent and despite her telephone number's registration on the national Do Not Call List in violation of 47 U.S.C. §§ 227(b) and (c). *Id.* ¶¶ 152-62. She also alleged that Defendants placed telephone solicitation calls to her telephone number without a registration certificate from the Texas Office of the

Secretary of State in violation of Section 302.101 of the Texas Business and Commerce Code. *Id.* ¶¶ 163-67. Finally, Clewett sued Defendants under Section 305.053 of the Texas Business and Commerce Code, which provides a private right of action under Texas law to individuals injured by TCPA violations. *Id.* ¶¶ 168-71. Clewett maintained that she suffered harm in the form of "[l]ost time tending to and responding to the unsolicited calls," "[i]nvasion of privacy," and "[n]uisance" as a result of Defendants' alleged violations. *Id.* ¶ 106.

### *B. Dispute Between New Wave Power and Cross-Claimants*

On November 22, 2021, Cross-Claimants brought claims against New Wave Power for breach of the duty to defend and duty to indemnify, fraudulent misrepresentation, negligent misrepresentation, and fraud by nondisclosure. Cross-Defs.' Cross Claims Against New Wave Power [ECF No. 38] ¶¶ 1-33.

Cross-Claimants notified this Court that they had settled with Clewett on September 16, 2022. Notice of Settlement [ECF No. 107] 1. Clewett dismissed her claims against Cross-Claimants shortly thereafter. On August 23, 2023, Clewett and New Wave Power notified the Court that they had reached a settlement and would submit a joint stipulation of dismissal after the respective parties finalize actions related to the settlement. Notice of Settlement [ECF No. 163] 1. Accordingly, only Cross-Claimants' claims against New Wave Power remain.

The Court will first address the parties' arguments with respect to Cross-Claimants' breach of contract allegations. Cross-Claimants argue that Clewett's claims triggered New Wave Power's duty to defend and indemnify under Sections 11.3 and 11.2 of the Agreement because the TCPA is a law or regulation that "relate[s] to" the privacy of personal data and because Clewett alleged that she suffered invasion of privacy, which is a personal injury under Texas law. Cross-Claimants'

4

Br. 9-12.² New Wave Power contends that its duty to defend and indemnify was not triggered because "Claims/Liabilities" is a defined term in the Agreement that is limited to claims involving "breaches of intellectual property rights." Cross-Def.'s Br. 9-10. Additionally, New Wave Power argues that Clewett's claims do not trigger its duties under Section 11.3 because that provision incorporates a list of "applicable laws" relating to privacy, and the TCPA neither appears on that list nor falls into the category of applicable laws. *Id.* at 10-11. Finally, New Wave Power contends that, because Cross-Claimants settled Clewett's claims without a finding of liability, New Wave Power's duty to indemnify can never be triggered as to those claims. *Id.*

As for Cross-Claimants' tort claims, New Wave Power argues that they fail as a matter of law because, in their Answer, Cross-Claimants admitted that the TCPA was not violated and denied that New Wave Power placed the calls as alleged by Clewett. *Id.* at 11. Cross-Claimants respond that Federal Rule of Civil Procedure 8(d) permits them to make inconsistent arguments and arguments in the alternative. Cross-Claimants Resp. 19.

New Wave Power further contends that the fraudulent misrepresentation claim fails because Cross-Claimants failed to present evidence showing that New Wave Power knew that its representations that it would follow all applicable laws and that it would refrain from placing outbound calls to potential customers of TXU were false at the time it made them. Cross-Def.'s Br. 12. Similarly, New Wave Power argues that Cross-Claimants cannot maintain a negligent misrepresentation claim based on future action and that Cross-Claimants have failed to produce evidence of a duty to disclose in support of the fraud by nondisclosure claim. *Id.* at 14-17. Cross-

---

² Cross-Claimants also argue that Section 11.2 was triggered because Clewett alleged that she suffered nuisance, which is a type of property damage contemplated by the Agreement, and that Section 11.3 was triggered because New Wave Power subcontracted its obligations under the Agreement to an entity called WNK Associates without Cross-Claimants' written authorization. The Court does not reach these arguments because it finds the other two dispositive. Cross-Claimants' Br. 10-11.

5

Claimants respond that fact issues remain as to each of these claims and that their negligent misrepresentation claim is based on New Wave Power's representations that no TCPA violations had occurred after Clewett notified Cross-Claimants that she was contemplating filing this lawsuit. Cross-Claimants' Resp. 22-25.

## II. LEGAL STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On cross motions for summary judgment, each party's motion is reviewed independently, and each time the evidence and inferences are viewed in the light most favorable to the nonmoving party. *Payne v. United States*, 383 F. App'x 483, 487 (5th Cir. 2010) (quoting *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001)). The mere filing of cross motions for summary judgment "does not warrant the grant of either motion if the record reflects a genuine issue of fact." *Hindes v. United States*, 326 F.2d 150, 152 (5th Cir. 1964) (citations omitted).

When a party bears the burden of proof on an issue, it "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative

6

defense, or (2) showing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322-25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Moreover, "conclusory statements, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010). Factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (citing *McCallum Highlands, Ltd. v. Wash. Cap. Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. ANALYSIS

Under Texas law, "courts apply general contract law principles when construing indemnity agreements." *Weeks Marine, Inc. v. Standard Concrete Prods., Inc.*, 737 F.3d 365, 369 (5th Cir. 2013) (citing *Ideal Lease Serv., Inc. v. Amoco Prod. Co.*, 662 S.W.2d 951, 952-53 (Tex. 1983)). Giving effect to the intent of the parties "as expressed by the words they chose" is the "primary objective" of this exercise. *In re Deepwater Horizon*, 470 S.W.3d 452, 464 (Tex. 2015) (citing *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010)). The interpreting court "must examine the policy as a whole, seeking to harmonize all provisions and render none meaningless." *Id.*

"[T]he duties to defend and indemnify 'are distinct and separate duties' and 'enjoy a degree of independence from each other.'" *Weeks Marine*, 737 F.3d at 369 (quoting *D.R. Horton–Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743-44 (Tex. 2009)). "The duty to defend means the

insurer will defend the insured in any lawsuit that 'alleges and seeks damages for an event potentially covered by the policy,' while the duty to indemnify means the insurer will 'pay all covered claims and judgments against an insured.'" *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 252-53 (5th Cir. 2011) (quoting *D.R. Horton–Texas*, 300 S.W.3d at 743). While "[t]he duty to indemnify is triggered by the actual facts establishing liability in the underlying suit," the duty to defend is broader. *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex. 1997) (citation omitted). *Cf. Liberty Mut. Fire Ins. Co. v. Copart of Connecticut, Inc.*, 75 F.4th 522, 535 (5th Cir. 2023) (explaining that although the duty to defend is broader in the sense that it can exist without the duty to indemnify ever arising, "the assumption that the duty to indemnify cannot exist where there is no duty to defend is 'faulty'" (quoting *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 254 (5th Cir. 2011)).

### *A. Duty to Defend*

When determining the scope of a party's duty to defend, Texas law requires courts to adhere to the eight-corners doctrine, solely reviewing "the language of the indemnity provision and the allegations in the third-party pleadings . . . 'without regard to the truth or falsity of those allegations.'" *Weeks Marine*, 737 F.3d at 369 (citations omitted).

#### *i. Section 11.3*

Cross-Claimants argue that Section 11.3 of the Agreement obligates New Wave Power to defend Cross-Claimants from Clewett's TCPA claims.[3] Section 11.3 provides:

> **Privacy and Information Security.** [New Wave Power] agrees to indemnify, defend and hold harmless [Cross-Claimants] from and against any and all Claims/Liabilities arising from, (i) any violation of any provision of Attachment 4, Privacy and Information Security; (ii) the negligence, gross negligence, bad faith, or intentional or willful misconduct of [New Wave Power] in connection with

---

[3] The Court notes that the Cross-Claimants do not assert that New Wave Power owes a duty to defend Cross-Claimants from Clewett's state law claims on this ground.

8

obligations set forth in Attachment 4; or (iii) any Information Security Incident as defined in Attachment 4.

Cross-Claimant's App. 11.

According to Cross-Claimants, Clewett's claims arise from New Wave Power's alleged violations of Section 3 of Attachment 4 ("Privacy Law Compliance Provision"), which provides, in relevant part:

> **COMPLIANCE WITH APPLICABLE LAW.** [New Wave Power] shall comply with all laws and regulations, that relate to the privacy, data protection, electronic storage, confidentiality or security of Personal Data[4] and apply to [New Wave Power's] role as a supplier of the services provided pursuant to the Agreement . . .

*Id.* at 25.

The Privacy Law Compliance Provision goes on to define the privacy-related "laws and regulations" as the "Applicable Laws" and provide a list of examples "which may include, without limitation[:]"

> (i) U.S. state security breach notification laws; laws imposing minimum security requirements; laws requiring the secure disposal of records containing certain Personal Data; and all other similar federal, state, and local requirements; (ii) all applicable international laws, regulations and requirements including without limitation European Union Directives governing general data protection (Directive 1995/46/EC), electronic commerce (Directive 2002/58/EC), data retention (Directive 2006/24/EC) and the General Data Protection Regulation (Regulation EU 2016/679); (iii) electronic storage industry standards concerning privacy, data protection, confidentiality or information security; (iv) U.S. state data protection

---

[4] Section 1.4 of Attachment 4 defines "Personal Data" as:

> [A]ny data or information that (i) relates to an individual and (ii) identifies or can be used to identify the individual (such as an individual's name, postal address, e-mail address, telephone number, date of birth, Social Security number, driver's license number, account number, credit or debit card information (including without limitation card account number, personal identification number, card validation code or value, and magnetic stripe data), health or medical information or one or more factors specific to physical, psychological, mental, economic, cultural or social identity or any other unique identifier). Personal Data shall include any non-public personal information regarding any individual that is subject to applicable national, state, regional, and/or local laws and regulations governing the privacy, security, confidentiality and protection of non-public personal information.

Cross-Claimants' App. 24.

>laws including, without limitation Massachusetts 201 CMR 17.00 - 17.05 Standards for the Protection of Personal Information of Residents of the Commonwealth; (v) applicable provisions of the U.S. Controlling the Assault of Non-Solicited Pornography and Marketing (CAN-SPAM) Act; (vi) FERC/NERC CIP Supply Chain Risk Management Reliability Standard, CIP 013-1; and (viii) [sic] as applicable, the provisions of the Payment Card Industry Data Security Standard.

*Id.*

Although the TCPA is not expressly listed as an "Applicable Law," Cross-Claimants contend that Clewett's claims arise from violations of a law "that relate[s] to the privacy, data protection, electronic storage, confidentiality or security of Personal Data" because the TCPA is a "privacy law related to phone numbers." Cross-Claimants' Resp. 15-16 (emphasis omitted) (quoting Cross-Claimants' App. 25). Acknowledging that the TCPA is "arguably" a privacy law, New Wave Power nevertheless asserts that the TCPA is not an "Applicable Law" because it is distinct from the enumerated "Applicable Laws." Cross-Def.'s Br. 10. Citing the doctrine of *inclusio unius est exclusio alterius*, New Wave Power maintains the TCPA does not fall into the same category as the listed "Applicable Laws" because "most of those deal with data protection geared to protect against cybersecurity and privacy breaches." *Id.* at 10-11.

The Court finds New Wave Power's arguments unavailing. The TCPA is, without question, a law "that relate[s] to the privacy" and "protection" of "Personal Data," including "telephone number[s]" associated with "individuals." Cross-Claimants' App. 25, 24. The Congressional Statement of Findings accompanying the text of the TCPA declares that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy." TCPA of 1991, Pub. L. No. 102–243, § 2, ¶ 5, 105 Stat. 2394 (1991). Thus, the TCPA protects the privacy and personal telephone numbers of individuals by banning telemarketers from "initiat[ing] any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party" and "making or transmitting a telephone solicitation to

the telephone number of any subscriber included in [the national do-not-call registry]." 47 U.S.C. § 227(b)(1)(B), (c)(3)(F).

Furthermore, New Wave Power's invocation of *inclusio unius est exclusio alterius*—"the presumption that purposeful inclusion of specific terms in a writing implies the purposeful exclusion of terms that do not appear"—is misguided. *City of Houston v. Williams*, 353 S.W.3d 128, 145 (Tex. 2011). As the Fifth Circuit has acknowledged, this doctrine is inapplicable when a list of contractual terms or provisions follows words like "including" and "without limitation." *St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 206-07 (5th Cir. 1996). *Cf. Heniff Transp. Sys., L.L.C. v. Trimac Transp. Servs., Inc.*, 847 F.3d 187, 191 (5th Cir. 2017) (explaining that words like "including" and "without limitation" in a statute indicate "an illustrative and non-exhaustive list"). Even New Wave Power concedes that the list of "Applicable Laws" is not exhaustive. Cross-Def.'s Br. 10.

To the extent New Wave Power intended to invoke the canon of *ejusdem generis*, which would limit any unmentioned "Applicable Laws" to laws "of the same general kind or class specifically mentioned," that argument fails for two reasons. *United States v. Buluc*, 930 F.3d 383, 389 (5th Cir. 2019) (citation omitted). First, the Privacy Law Compliance Provision "lacks the basic premise for applying *ejusdem generis*—a list of specific terms followed by a catchall generic term or terms." *Id.* Rather, the Privacy Law Compliance Provision does the opposite—it *first* names the catchall term ("Applicable Laws"), and *then* enumerates a non-exhaustive list of specific terms. Cross-Claimants' App. 25. Second, the class of enumerated "Applicable Laws" as defined by New Wave Power certainly encompasses the TCPA because it too "deal[s] with data protection geared to protect against . . . privacy breaches." Cross-Def.'s Br. 10. Accordingly, the Court concludes that Clewett's TCPA claims arise from violations of a law "that relate[s] to the privacy,

11

data protection, electronic storage, confidentiality or security of Personal Data." Cross-Claimants' App. 25.

New Wave Power also argues that its duty to defend under Section 11.3 was not triggered by Clewett's Second Amended Complaint because "the definition of 'Claims/Liabilities' is expressly made in the context of breaches of intellectual property rights." Cross-Def.'s Resp. 8-9. New Wave Power is correct that the term "Claims/Liabilities" is defined in Section 11.1:

> **Infringement.** [New Wave Power], at its own expense, shall defend [Cross-Claimants] against any third party claim that any part of the Work or [Vistra's] use of Work infringes or misappropriates any Intellectual Property and will indemnify and hold harmless [Cross-Claimants] from and against all claims, liabilities, damages, demands, lawsuits, causes of action, strict liability claims, penalties, fines, administrative law actions and orders, expenses (including, but not limited to, reasonable attorneys' fees) and costs of every kind and character (collectively, **"Claims/Liabilities"**) incurred by [Vistra] as a result.

Cross-Claimants' App. 11.

However, just because the term "Claims/Liabilities" is first defined in the context of breaches of intellectual property rights does not thereby limit New Wave Power's duty to defend to only intellectual property infringement claims. First, when an "integrated definition" is used in legal writing, the capitalized term within the parentheses refers only to the immediately preceding nouns and their modifiers. *See Olympus Ins. Co. v. AON Benfield, Inc.*, 711 F.3d 894, 899 (8th Cir. 2013) ("[A]n integrated definition constitutes part of the substantive provisions of a contract, and the defined term is defined by tucking it at the end of the definition, in parentheses." (quoting KENNETH A. ADAMS, A MANUAL OF STYLE FOR CONTRACT DRAFTING § 5.34 (2d ed. 2008))). Accordingly, in the Agreement, "Claims/Liabilities" means "all claims, liabilities, damages, demands, lawsuits, causes of action, strict liability claims, penalties, fines, administrative law actions and orders, expenses (including, but not limited to, reasonable attorneys' fees) and costs of every kind and character." Cross-Claimants' App. 11. The definition is not limited by any

modifiers referring to intellectual property rights. *Olympus Ins. Co.*, 711 F.3d at 898 (holding that a defined term did not encompass the modifying phrase following the integrated definition parenthetical).

Secondly, accepting New Wave Power's interpretation would render other provisions in the Agreement virtually meaningless. For example, Section 11.4 of the Agreement, titled "Employment Related Claims," provides, in part, that:

> [New Wave Power], at its own expense, shall indemnify, defend and hold harmless [Cross-Claimants] from and against any Claims/Liabilities by or on behalf of [New Wave Power's] employees, sub-contractors, or suppliers that arise from or relate to any employment-related statutes and laws including, without limitation, any Claim/Liability under applicable state, federal or local laws and regulations with respect to labor relations, discrimination, wages, benefits or other compensation, retaliation or unlawful discharge[.]

Cross-Claimants' App. 11.

According to New Wave Power's construction, New Wave Power's duty to defend under Section 11.4 could only be triggered by a cause of action "aris[ing] from or relate[d] to any employment-related statutes and laws" if the cause of action also alleges breaches of intellectual property rights. *Id.*; Cross-Def.'s Resp. 8-9. Even if such a claim exists, Section 11.4 (and Sections 11.2 and 11.3 for that matter) would be redundant under New Wave Power's reading because Section 11.1 already captures all liabilities "incurred by [Vistra] as a result [of breaches of intellectual property rights]," which would certainly include employment-related breaches of intellectual property rights. Cross-Claimants' App. 11. "[S]eeking to harmonize all provisions and render none meaningless," the Court finds that the Agreement does not limit the term "Claims/Liabilities" to claims involving breaches of intellectual property rights. *In re Deepwater Horizon*, 470 S.W.3d at 464.

Finally, New Wave Power argues that Section 11.3 only requires a defense against actual violations of the provisions of Attachment 4, as opposed to alleged violations. Cross-Def.'s Br. 11.

13

Cross-Claimants respond by pointing to the definition of "Claims/Liabilities" in the Agreement, which includes "all claims, liabilities, damages, demands, lawsuits, causes of action . . . of every kind and character." Cross-Claimants' Resp. 16. Cross-Claimants also emphasize the eight-corners rule and argue that "a duty to defend would be purely illusory if it required an actual violation to be proven before a duty could arise." *Id.* (citing *Weeks Marine*, 737 F.3d at 369).

The Court agrees with Cross-Claimants. The eight-corners doctrine requires New Wave Power to defend Cross-Claimants from claims that fall within the scope of the relevant indemnity provision "based on the allegations in the third-party pleadings . . . 'without regard to the truth or falsity of those allegations.'" *Weeks Marine*, 737 F.3d at 369 (citations omitted). This Court "may not consider 'facts ascertained before the suit, developed in the process of the litigation, or by the ultimate outcome of the suit' as part of its duty-to-defend determination." *Copart of Connecticut, Inc.*, 75 F.4th at 528 (quoting *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 99 F.3d 695, 701 (5th Cir. 1996)). New Wave Power cites no authority, and the Court found none, supporting its interpretation that this requirement is vitiated unless the provision expressly states that it covers "alleged" violations. *See Richards v. State Farm Lloyds*, 597 S.W.3d 492, 498 (Tex. 2020) (holding that insurer "did not contract away the eight-corners rule altogether merely by omitting from its policy an express agreement to defend claims that are groundless, false or fraudulent" (quotation marks omitted)).

The Court finds that Clewett's claims arise from a violation of Section 3 of Attachment 4 because they allege that New Wave Power violated the TCPA, which is a law relating to the privacy of personal data as defined by the Agreement. Accordingly, New Wave Power breached its duty to defend under Section 11.3 by failing to defend Cross-Claimants from Clewett's claims.

*ii. Section 11.2*

Cross-Claimants also argue that Section 11.2 of the Agreement obligates New Wave Power to defend Cross-Claimants against all of Clewett's claims. Section 11.2 provides:

> **Personal Injury and Property Damage.** [New Wave Power], at its own expense, shall defend, protect, indemnify and hold [Cross-Claimants] harmless from and against all Claims/Liabilities based upon personal injury and/or death, property damage and breaches of confidentiality arising out of or in any way incident to [New Wave Power's] performance of this Agreement, or otherwise in connection with the acts or omissions of [New Wave Power], its employees, agents or Providers.

Cross-Claimants' App. 11. Citing *Grassroots Leadership, Inc. v. Texas Department of Family & Protective Services*, Cross-Claimants argue that Clewett's claims are "based upon personal injury," Cross-Claimants' Br. 10, because invasion of privacy is a personal injury. 646 S.W.3d 815, 821 (Tex. 2022) ("We have recognized invasion of privacy as a personal injury." (citation omitted)).

The Court agrees that Section 11.2 obligates New Wave Power to defend Cross-Claimants from Clewett's claims because they are "based upon personal injury." Cross-Claimants' App. 11. In support of her claims, Clewett alleges that Defendants invaded her privacy by robo-calling her without her consent and subjecting her to "continuous and repetitive telephone solicitation without obtaining a registration certificate from the Office of the Secretary of State," despite her phone number's registration on the national do-not-call list. Second Am. Compl. ¶¶ 106, 152-67, 103. Texas law expressly recognizes invasion of privacy as a personal injury. *Grassroots Leadership, Inc.* 646 S.W.3d at 821. Further, Black's Law Dictionary defines "personal injury" as "[a]ny invasion of a personal right, including mental suffering." *Injury*, BLACK'S LAW DICTIONARY (11th ed. 2019). By statute, Texas allows individuals to seek damages for mental anguish resulting from violations of Section 302 of the Texas Business and Commerce Code. *See* TEX. BUS. & COM. CODE ANN. §§ 302.303, 17.50(a). As such, the Court concludes that Clewett's claims are "based upon personal injury." Cross-Claimants' App. 11. Accordingly, New Wave Power breached its duty to

defend under Section 11.2 by failing to defend Cross-Claimants from Clewett's claims. Because the Court finds that New Wave Power breached its duty to defend under Sections 11.3 and 11.2, Cross-Claimants' Motion will be granted, and Cross-Defendant's Motion will be denied on Cross-Claimants' breach of duty to defend claim.

### *B. Indemnification*

"The duty to indemnify arises from the actual facts that are developed to establish liability in the underlying suit." *Quorum Health Res., L.L.C. v. Maverick Cnty. Hosp. Dist.*, 308 F.3d 451, 468 (5th Cir. 2002) (citation omitted). "'[W]here an indemnitee enters into a settlement with a third party, it may recover from the indemnitor only upon a showing that potential liability existed, and that the settlement was reasonable, prudent, and in good faith under the circumstances.'" *XL Specialty Ins. Co. v. Kiewit Offshore Servs., Ltd.*, 513 F.3d 146, 152 (5th Cir. 2008) (quoting *Ins. Co. of N. Am. v. Aberdeen Ins. Servs.*, 253 F.3d 878, 888 (5th Cir. 2001)). However, "[i]t is well-settled in Texas that when an insurer[5] breaches a duty to defend its insured, it is bound, in subsequent proceedings, by a settlement or judgment rendered against the insured." *Columbia Mut. Ins. Co. v. Fiesta Mart, Inc.*, 987 F.2d 1124, 1127 (5th Cir. 1993) (citing *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 120 (5th Cir. 1983)). In other words, "[a] consequence of breach" is that an indemnitor who "wrongfully failed to defend its [indemnitee] is liable for any damages assessed against the [indemnitee]," including in a settlement, "subject only to the condition that any settlement be reasonable." *Ideal Mut. Ins. Co. v. Myers*, 789 F.2d 1196, 1200 (5th Cir. 1986).

---

[5] The principles governing an insurer's duty to defend generally "apply with equal force to an indemnitor's contractual promise to defend its indemnitee." *Eng. v. BGP Int'l, Inc.*, 174 S.W.3d 366, 372 n.6 (Tex. App. – Houston [14th Dist.] 2005, no pet.); *see also Weeks Marine*, 737 F.3d at 369 (citing insurance cases in the contractual indemnity context).

Other than those already discussed *supra*, New Wave Power does not offer any arguments contesting whether the indemnity provisions in Sections 11.2 and 11.3 of the Agreement cover Clewett's claims. Neither does New Wave Power contend that the settlement was unreasonable. Rather, New Wave Power argues that, because Cross-Claimants settled with Clewett, Cross-Claimants can never be found liable and, thus, New Wave Power's duty to indemnify was never triggered. Cross-Def.'s Br. 7-8. But the Fifth Circuit, applying Texas law, has held that "[t]he settling indemnitee need not prove actual liability to the third party before recovering from the indemnitor." *Ins. Co. of N. Am.*, 253 F.3d at 888 (citing *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 721 n.15 (5th Cir. 1995)). And because the Court found that New Wave Power breached its duty to defend, New Wave Power is "barred from collaterally attacking a . . . settlement between the [indemnitee] and the plaintiff." *Great Am. Ins. Co. v. Hamel*, 525 S.W.3d 655, 662 (Tex. 2017) (citations omitted).

The Court finds that Cross-Claimants have made the requisite showing that potential liability existed and that the settlement was reasonable, prudent, and in good faith under the circumstances. The Declaration of Frank C. Brame, counsel of record for Cross-Claimants, attests that "potential liability existed in light of the complaint and allegations therein" and "[t]he settlement in this case was reasonable, prudent and in good faith." Cross-Claimants' App. 46. Both statements remain unchallenged by New Wave Power. Accordingly, the Court finds that Cross-Claimants have established that Sections 11.2 and 11.3 of the Agreement require New Wave Power to indemnify Cross-Claimants' settlement of Clewett's claims. Because the Court finds that New Wave Power owes a duty to indemnify, Cross-Claimants' Motion is granted and Cross-Defendant's Motion is denied on Cross-Claimants' indemnification claim.

### *C. Tort Claims*

As for Cross-Claimants' fraudulent misrepresentation, negligent misrepresentation, and fraud by nondisclosure claims, the Court finds that genuine issues of material fact exist such that a reasonable jury might return a verdict in favor of either party. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87. Because the Court finds genuine issues of material fact, Defendant's Motion will be denied as to Cross-Claimants' fraudulent misrepresentation, negligent misrepresentation, and fraud by nondisclosure claims.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Cross-Claimants' Motion for Partial Summary Judgment [ECF No. 130] and **DENIES** Defendant New Wave Power, LLC's Motion for Summary Judgment on Co-Defendants Vistra Corporate Services Company and TXU Energy Retail Company, LLC's Claims [ECF No. 133].

**SO ORDERED.**

SIGNED September 13, 2023.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**